UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK LEVI BROWN,

        Case No. 06-13906

    Petitioner,

        David M. Lawson
v.        United States District Judge

        R. Steven Whalen
KENNETH McKEE, Warden,        United States Magistrate Judge

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Derrick Brown's Petition for Writ of Habeas Corpus, filed under 28 U.S.C. § 2254, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the Petition be DENIED.

**I.    PROCEDURAL HISTORY**

Petitioner was tried by a jury in the Wayne County Circuit Court, the Honorable Daniel P. Ryan, presiding, on charges of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony (felony-firearm). He was convicted of voluntary manslaughter, felon in possession, and felony-firearm,

receiving sentences of 129 months to 30 years, 5 to ten years,[1] and two years consecutive, respectively.

Petitioner appealed by right to the Michigan Court of Appeals, which affirmed his conviction in an unpublished *per curiam* opinion on January 27, 2005. The Michigan Supreme Court denied leave to appeal on June 30, 2005.

The present petition raises two issues, both of which were fully exhausted in the direct appeals:

> I. THE TRIAL COURT ERRED IN REINSTATING A JURY PEREMPTORY REMOVED BY PETITIONER UNDER BATSON, WHERE THERE WAS NO PRIMA FACIE EVIDENCE OF DISCRIMINATORY INTENT.
>
> II. THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE CONVICTION OF MANSLAUGHTER WHERE THE PROSECUTION FAILED TO PROVE THE KILLING WAS NOT COMMITTED IN SELF-DEFENSE.

## II.  FACTS ADDUCED AT TRIAL

The charges in this case arose out of Petitioner's shooting and killing of Taj-Ma Austin on April 19, 2003. Petitioner's defense was self-defense.

Riunita Logan lived at 2001 Burlingame in Detroit, Michigan, where the shooting took place. She testified that around 3:00 a.m on April 19, 2003, she saw Petitioner and Austin arguing in a hallway outside her apartment; Petitioner was waving a silver revolver (Tr. 7-22-03, 203-209). The argument went on for 30 or 40 minutes, and Perry Long, who

---

[1] These sentences were enhanced based on the finding that Petitioner was a third-time habitual offender.

lived in the neighborhood, was trying to break up the fight. *Id*. at 209-11. Petitioner and Austin moved in and out of Petitioner's apartment several times, and at one point "mugged" each other, that is, pushed each other in the forehead. *Id.* 212-16, 226-27. Logan testified that Perry Long told Petitioner to put the gun down. *Id.* 231-32. At some point, the Petitioner told Austin that he had "better not put your hands on me or I'm going to shoot you." Austin replied, "Shoot me then." *Id.* 233-34. They then hit each other in the face, at which point the Petitioner stopped for a second, backed up two or three steps into his apartment, and shot Austin. *Id.* 233-36. At that time, Logan said, Austin had nothing in his hands. *Id.* 236. She testified that during the entire episode, Petitioner had the gun in his hands, but both Austin and Long were unarmed. *Id.* 212, 217-19, 226-27.

Perry Long testified that he and Petitioner spent that day at the Burlingame address, and that Austin came by around 12:30 or 1:00 a.m. (Tr. 7-23-04, 106-11, 118). Petitioner had a couple of drinks, and also took some ecstacy. *Id*. 114-15. Long said that Petitioner and Austin started arguing in Apt. 304, and Petitioner went back down the hall to his own apartment, Apt. 302. When Long next saw Petitioner in the hallway, he was carrying a .357 Magnum. *Id.* 123-25. Petitioner kept the weapon at his side all the time he was arguing with Austin. The two went back to Petitioner's apartment. Long said that Austin did not have a weapon, and that he did not see any other weapons in Petitioner's apartment that day. *Id.* 126-32. Long tried to break up the fight, telling Petitioner to put the gun down. When Austin pushed the Petitioner in the face, the Petitioner stepped back, raised the gun, and fired. *Id.* 134-39. Long said that he saw no weapons near Austin's body. *Id*.

-3-

149.

Several police officers who arrived on the scene testified that they did not observe any shotguns or other firearms near the body or in Apartment 302. (Tr. 7-23-03, 54, 71, 190).

Petitioner testified in his own behalf. He said that on April 19, 2003, there was both a .357 Magnum and a shotgun in his apartment, and that Austin had handled the shotgun on previous occasions. (Tr. 7-23-03, 266-67). He testified that while they were arguing in Apt. 302, Austin threatened him, then ran toward the radiator where the shotgun was standing, and reached for the shotgun. *Id.* 270; Tr. 7-24-03, 40, 41. Petitioner ran from the apartment, but said that the shotgun was right by Austin's body when he left. *Id.* 22.

Dwayne Hicks testified that he was in Petitioner's apartment on April 19th, and that he saw a .357 Magnum on the bed and a 12-gauge shotgun by the radiator (Tr. 7-24-03, 51).

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -

> i. resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> ii. resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams* v *Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. Under subsection (d), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413. *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id*.

## IV.   ANALYSIS

### A.   Denial of Petitioner's Peremptory Challenge

During jury selection, the prosecutor, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), challenged the Petitioner's peremptory removal of two white jurors (Tr. 7-22-03, 123-26). The trial judge noted that at that point, the defense had exercised eight peremptory challenges, all against Caucasian jurors. *Id.*, 124. However, the judge denied the prosecutor's *Batson* challenge to these two jurors because the defense offered race-neutral reasons for excusing them. Nevertheless, the judge cautioned Petitioner's counsel that in the future, she was "on notice that Batson may be applicable unless there's an articulable basis for any further removal of Caucasian jurors." *Id.,* 126.

The prosecution raised a subsequent *Batson* challenge when the Petitioner exercised his tenth peremptory against a white juror–the tenth white juror removed by the defense. *Id.*, 138-39. When asked the reason she removed this juror, Petitioner's counsel, noting that the jury pool was predominantly white, said that she was not required to give a basis for this peremptory. *Id.*, 139. After the judge insisted that she provide a basis for removing the tenth consecutive white juror, counsel stated, "No particular reason other than I just decided that she wouldn't be a good juror for Mr. Brown." *Id.*, 139-40. The judge sustained the prosecutor's "reverse *Batson*" challenge and reinstated the juror. *Id.*, 140. The judge intimated that Petitioner's counsel would have to provide an "articulable ..basis" for any further peremptories against Caucasians:

> MS. YOUNG (Petitioner's counsel): So if I decide that I want to exercise a peremptory challenge, it has to be a black person that I excuse, is that the court's ruling?
>
> THE COURT: No, you have to have an articulable basis. If you removed

>ten straight Caucasians, you need to have- - -
>
>MS. YOUNG: I have also removed blacks from the potential jury.
>
>THE COURT: Not in this case. All right. All rise for the jury. You've only- - you had ten and you removed all ten Caucasians. *Id.*, 140.

Of her three remaining peremptory challenges, Petitioner's counsel exercised one more before expressing satisfaction with the jury. *Id.* 141-44. Later during the trial, counsel and the court noted for the record that the jury that was seated consisted of seven whites, five blacks, and one Hispanic (Tr. 7-24-03, 47-48).

In *Batson*, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from using peremptory juror challenges in a racially discriminatory manner. In *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Court held that a criminal defendant is likewise barred from the use of race-based peremptory challenges:

>"We hold that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges."

In this case, the trial judge denied two of the prosecutor's *Batson* challenges because the Petitioner satisfied his burden of showing a racially neutral reason for removing the jurors. However, finding that a pattern of excusing only white jurors made out a *prima facie* case of discriminatory use of peremptories, the judge concluded that Petitioner's rationale for excusing another white juror ("[n]o particular reason other than I

just decided that she wouldn't be a good juror for Mr. Brown") was insufficient, and upheld the prosecutor's *Batson* challenge, reinstating the juror.

In *Batson*, the Court instructed that in determining the existence of a *prima facie* case of discriminatory peremptories, trial judges could consider a number of factors, including "a pattern of strikes" against a particular race included in the venire. *Id.*, 476 U.S. at 96-97. It would appear, then, that the Michigan Court of Appeals did not unreasonably apply *Batson* or *McCullom*. However, it is not necessary to reach that question, because the Petitioner does not have a federal constitutional right to exercise *any* peremptory challenges.

While *Batson* gives a criminal defendant constitutionally based protection against a prosecutor's use of racially discriminatory peremptory challenges, neither it nor any other case suggests that a defendant has a constitutional right to exercise his or her own peremptory challenges. To the contrary, the Supreme Court has consistently held that the constitution provides no such right. In *McCullom*, 505 U.S. at 57, the Court stated:

> "As a preliminary matter, it is important to recall that peremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial. This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial. See *Frazier v. United States,* 335 U.S. 497, 505, n. 11, 69 S.Ct. 201, 206, n. 11, 93 L.Ed. 187 (1948); *United States v. Wood,* 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936); *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 29-30, 63 L.Ed. 1154 (1919)."

*See also U.S. v. Martinez-Salazar*, 528 U.S. 304, 311, 120 S.Ct. 774, 779, 145

L.Ed.2d 792 (2000) ("But we have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension"); *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) ("We have long recognized that peremptory challenges are not of constitutional dimension").

In *Ross v. Oklahoma, supra*, the Court held that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." In this case, the Petitioner has not argued that the racially diverse jury that *was* seated was anything other than impartial.

Michigan does provide a statutory right to peremptory challenges, *see* M.C.L. § 768.12. Nevertheless, in *People v. Juarez*, 158 Mich.App. 66, 71, 404 N.W.2d 222 (1987), cited by the Petitioner, the court held consistently with long-standing United States Supreme Court precedent:

> "In our opinion there is no constitutional right to peremptory challenges, and if the failure to remove a peremptorily challenged juror does occur such defect would not constitute a violation of the constitution."

Thus, if the trial judge in this case committed error in reinstating the challenged juror, it was an error of state law that is not cognizable in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). *See Haywood v. Portuando*, 288 F.Supp.2d 446, 463 (S.D.N.Y. 2003) ("even if the trial court incorrectly denied Haywood a peremptory challenge, that denial did not violate the federal constitution").

Accordingly, Petitioner is not entitled to a writ of habeas corpus.

### B.   Sufficiency of the Evidence[2]

Although originally charged with second-degree murder, the jury convicted the Petitioner of the lesser offense of voluntary manslaughter.  Petitioner challenges the sufficiency of the evidence to convict him of this charge, arguing that the prosecutor failed to prove beyond a reasonable doubt that the homicide was not committed in self-defense.

The critical issue in this case is whether the Michigan courts reasonably applied the Supreme Court's holding in  *Jackson* v *Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in finding legally sufficient evidence that Petitioner committed the offense of voluntary manslaughter and did not act in self-defense.   *Jackson* set forth the following test for assessing the sufficiency of the evidence under a due process standard:

> "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* 443 U.S. at 319.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*, 443 U.S. at 324, fn 16. However, *Jackson* rejected the  "no evidence" rule of *Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), an  approach which would validate a conviction so long as the prosecution presented *some* evidence on each element of the

---

[2] Petitioner challenges the sufficiency of the evidence only in relation to the voluntary manslaughter conviction, not as to the felon in possession or felony-firearm convictions.

offense; rather the reviewing court must assess the quality of the proofs and the reasonableness of the inferences which can be drawn from the evidence. *Jackson*, 443 U.S. at 320.

Under Michigan law, voluntary manslaughter is "an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control." *People v. Fortson*, 202 Mich.App. 13, 19, 507 N.W.2d 763, 767 (1993); *See also People v. Pouncey,* 437 Mich. 382, 388, 471 N.W.2d 346 (1991). When the defendant produces evidence to support a theory of self-defense, the prosecutor assumes the burden of disproving it beyond a reasonable doubt. *People v. Bell,* 155 Mich.App. 408, 414, 399 N.W.2d 542 (1986); *People v. Fortson, supra*, 202 Mich. App. at 20. "[T]he killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin,* 434 Mich. 482, 502, 456 N.W.2d 10 (1990).

In rejecting the sufficiency of the evidence issue, the Michigan Court of Appeals wrote:

> "Defendant claimed that he shot the decedent, Taj-Ma Austin, during an argument in defendant's apartment after Austin threatened him and made a move toward a rifle standing against a wall. The evidence conflicted as to whether defendant had a rifle in his apartment. Other evidence showed that defendant shot Austin during a physical altercation after Austin dared him to shoot. Prosecution witnesses testified that Austin was standing in the doorway of defendant's apartment at the time he was shot, which was consistent with the location of the body. In addition, the medical examiner testified that the shot would have rendered Austin immediately unconscious,

> the implication being that he would have fallen where he stood when shot. Such evidence, if believed, was sufficient to prove beyond a reasonable doubt that defendant did not have an honest and reasonable belief that Austin was about to use a deadly weapon against him and thus did not act in self-defense."

In reaching its conclusion, the Court of Appeals did not unreasonably apply *Jackson v. Virginia*, which instructs that the evidence must be viewed in the light most favorable to the prosecution. The Court of Appeals correctly noted that there was conflicting evidence as to whether the Petitioner even had the shotgun in his apartment. In contrast to the Petitioner's testimony that the shotgun was lying against a radiator in his apartment, the two eyewitnesses, Ms. Logan and Mr. Long, testified that they never saw a shotgun or any other firearm in Petitioner's apartment, other than the handgun that Petitioner held in his hand. Police personnel who arrived on the scene testified that they saw no shotgun by Mr. Austin's body or anywhere else in the apartment. Petitioner testified that after he shot Austin, he fled the apartment, but did not remove the shotgun, which, he said, was right by Austin's body when he left.

Thus, a reasonable jury could conclude that there *was* no shotgun in the apartment, which would defeat Petitioner's claim that he had an honest and reasonable fear that Austin was going to shoot him. In addition, Petitioner's claim of self-defense was impaired by Ms. Logan's testimony that the he threatened Austin by telling him that he had "better not put your hands on me or I'm going to shoot you." Moreover, during the entire episode, Petitioner was the only person armed with a dangerous weapon, and he was the only person present who claims to have seen Austin reach for a shotgun.

*See People v. Forston, supra*, 202 Mich. App. at 20 (rejecting a self-defense argument where the defendant was the only person who saw the victim with a gun).

Petitioner has challenged the sufficiency of the evidence only as to the element of self-defense. Of course, the other elements of voluntary manslaughter–that the Petitioner intentionally shot Austin under the influence of passion or hot blood produced by adequate provocation (Austin punched him in the face after a lengthy and heated argument), and before a reasonable time has passed for the blood to cool (Petitioner shot Austin within seconds after having been struck)–have easily been met. Because the Michigan courts did not unreasonably apply *Jackson* to this issue, the petition must be denied.

## V.   CONCLUSION

I therefore recommend that the petition for writ of habeas corpus be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: January 7, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 7, 2009.

S/G. Wilson<br>
Judicial Assistant